105 F.3d 279
 Lois R. MORRIS, Individually and as Administratrix of the
Estate of Carlos R. Morris, Deceased, Plaintiff-Appellee,
Westfield Companies, Intervenor Third-Party Plaintiff-Appellant,
v.
CRETE CARRIER CORPORATION and Joey R. Hall, Defendants,
Crete Carrier Corporation, Intervenor Third-Party Defendant-Appellee.
 No. 95-6457.
 United States Court of Appeals,
Sixth Circuit.
 Jan. 23, 1997.
 
 Guy E. Millward, Jr., Durenda L. Lawson, Millward & Jewell, Barbourville, KY, for plaintiff-appellee.
 Gregory A. Keyser, Timothy D. Martin, Bowles, Rice, McDavid, Graff, Love & Getty, Lexington, KY, for intervenor-appellant.
 Ronald L. Green, Michael J. Cox, Boehl, Stopher & Graves, Lexington, KY, for intervenor-appellee.
 Before: MERRITT, NELSON, and DAUGHTREY, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiff Lois Morris filed this action against defendant Crete Carrier Corporation, alleging that her husband died in a car accident caused by Crete's driver. Mrs. Morris' insurance company, Westfield Companies, intervened to recover from Crete the benefits Westfield had paid to Mrs. Morris as a result of her husband's death. After Mrs. Morris settled her claims against Crete, Westfield sought to recover from Mrs. Morris any double recovery she had received. The district court granted summary judgment in favor of Crete and denied as moot Westfield's request to add a claim against Mrs. Morris. We reverse both decisions.
 
 
 2
 * Plaintiff Lois Morris filed this action as Administratrix of the Estate of her husband, Carlos R. Morris. The complaint alleged that defendant Joey R. Hall was negligently operating a tractor trailer rig for defendant Crete Carrier Corporation when the rig collided with Mr. Morris' car. Mr. Morris was killed in the accident.
 
 
 3
 Mr. and Mrs. Morris were insured by Westfield Companies for $100,000. Under the policy, Westfield paid Mrs. Morris $1,000 in funeral expenses and $26,800 for the loss of Mr. Morris' income. Westfield also continued to pay Mrs. Morris $1,600 per month.
 
 
 4
 Mrs. Morris filed this action against Crete, seeking damages for Mr. Morris' lost wages, his pain and suffering, medical and funeral expenses, and loss of consortium. Mrs. Morris also asserted a loss of consortium claim on behalf of her daughter. Crete was self-insured for liability up to $1,000,000 and had excess liability insurance of $29,000,000. Westfield intervened to recover from Crete the lost earnings and funeral expenses Westfield had paid to Mrs. Morris. After Mrs. Morris settled her action against Crete, Westfield sought to add a claim against Mrs. Morris to recover any double recovery she had received.
 
 
 5
 Crete moved to dismiss Westfield's complaint. The district court granted Crete's motion, treating it as a motion for summary judgment. The district court held that Westfield could not recover its benefits payments because Crete had expended its primary insurance through settlement, and Westfield could not recover from Crete's excess liability insurers. The district court also denied as moot Westfield's motion to add a claim against Mrs. Morris.
 
 II
 
 6
 This Court reviews grants of summary judgment de novo. City Management Corp. v. U.S. Chem. Co., 43 F.3d 244, 250 (6th Cir.1994). Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We must view all the facts and inferences drawn therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).
 
 A. Subrogation Claims
 
 7
 Under the Kentucky Motor Vehicle Reparations Act, every Kentucky automobile owner is required to provide security for basic reparation benefits of $10,000. K.R.S. §§ 304.39-080(5), 020(2). These basic benefits must be paid promptly and without regard to fault by the insurer covering the car in which the victim was riding. K.R.S. §§ 304.39-040(1), 050(1), 210(1). An automobile owner may also carry added reparation benefits coverage. K.R.S. § 304.39-140(1).
 
 
 8
 The parties agree that Westfield provided Mr. and Mrs. Morris with a policy of $10,000 in basic benefits and $90,000 in added benefits. The Reparations Act provides the basic benefits insurer and the added benefits insurer with rights of subrogation to the rights of its insured. Subrogation is defined as:
 
 
 9
 [t]he substitution of one person in the place of another with reference to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.
 
 
 10
 Black's Law Dictionary 1427 (6th ed. 1990). Under the subrogation rights provided in the Reparations Act, Westfield seeks to recover the basic and added benefits it paid to Mrs. Morris.
 
 1. Basic Benefits
 
 11
 The victim's basic benefits insurer has the following subrogation rights under the Reparations Act:
 
 
 12
 A reparation obligor which has paid or may become obligated to pay basic reparation benefits shall be subrogated to the extent of its obligations to all of the rights of the person suffering the injury against any person or organization other than a secured person.
 
 
 13
 K.R.S. § 304.39-070(2). A "secured person" is defined as the "owner, operator or occupant of a secured motor vehicle and any other person or organization legally responsible for the acts or omissions of such owner, operator or occupant." K.R.S. § 304.39-070(1). In addition, the Reparations Act includes a separate provision for recovery against the secured person's insurer:
 
 
 14
 A reparation obligor shall have the right to recover basic reparation benefits paid to or for the benefit of a person suffering the injury from the reparation obligor of a secured person as provided in this subsection, except as provided in KRS 304.39-140(3).
 
 
 15
 K.R.S. § 304.39-070(3). Under § 304.39-140(3), the victim is entitled to priority over its insurer's claim for basic benefits. Section 304.39-070(4) limits the recovery for basic or added benefits to the amount of "the automobile bodily injury liability coverage available to the secured party after priority of entitlement ... has been satisfied."
 
 
 16
 The parties agree that Westfield paid basic benefits to Mrs. Morris. Although the district court held that Crete is a secured person, the district court and the parties agreed that Westfield could proceed against Crete because Crete is its own insurance carrier. The district court held that Westfield could not recover the basic benefits it paid to Mrs. Morris because Crete exhausted its $1,000,000 self-insurance policy. In addition, the district court held that Westfield could not recover from Crete's excess liability insurers.
 
 
 17
 Westfield argues that it could recover from Crete's excess liability insurers under section 304.39-070(2), which permits subrogation against "any person or organization other than a secured person." Crete argues that the holding in State Auto. Mut. Ins. Co. v. Empire Fire & Marine Ins. Co., 808 S.W.2d 805, 807-08 (Ky.1991), bars Westfield from recovering from Crete's excess liability insurers. In Empire Fire, the Kentucky Supreme Court held that a victim's basic benefits insurer could not recover from the tort-feasor's excess liability insurer under section 304.39-070(2) because the Reparations Act had abolished the victim's tort claims for basic benefits. Because the insurer's subrogation rights are derivative from the victim's rights, the victim's basic benefits insurer had no claim. Id. However, a basic benefits insurer could recover under section 304.39-070(2) if the victim could recover the basic benefits. Therefore, Westfield could recover its basic benefits if Mrs. Morris could recover those benefits from Crete's excess liability insurance.
 
 
 18
 Crete argues that Mrs. Morris could not recover basic benefits because section 304.39-060(2)(a) abolishes tort liability for "bodily injury, sickness or disease to the extent [of] the basic reparation benefits provided." This section does not abolish tort liability for death, which is the basis of Mrs. Morris' claim. However, Crete argues that the court should hold that this section was meant to include death because an earlier section of the code defined "injury" to mean "bodily harm, sickness, disease, or death." K.R.S. § 304.39-020(4). We are not persuaded by Crete's argument. Crete asks the court to hold that section 304.39-060(2)(a) abolishes tort liability for: "bodily injury [which Crete argues means bodily harm, sickness, disease, or death], sickness, or disease." Under Crete's suggested reading, the terms bodily, sickness, and disease would be repeated twice. If Crete's argument were correct, the section could have abolished tort liability for injury, without repeating the other terms. Instead, the legislature chose to specify the circumstances for which it abolished tort liability, and death was excluded from the list. Section 304.39-060(2)(a) did not abolish Mrs. Morris' tort claim for basic benefits based on her husband's death.
 
 
 19
 Westfield can recover its basic benefits payments from Crete's excess liability insurance through the subrogation rights provided in section 304.39-070(2). Neither the holding in Empire Fire nor section 304.39-060(2)(a) bars Westfield's recovery of its basic benefits.
 
 2. Added Benefits
 
 20
 The victim's added benefits insurer has the following subrogation rights under the Reparations Act:
 
 
 21
 The added reparation obligor shall be subrogated, subject to KRS 304.39-70 and 304.39-300, to the injured person's right of recovery against any responsible third party.
 
 
 22
 K.R.S. § 304.39-140(2) (emphasis added). The victim is entitled to priority over its insurer's subrogation claim for added benefits. § 304.39-140(3). The parties agree that Westfield has paid Mrs. Morris added benefits.
 
 
 23
 The district court held that Westfield could not recover added benefits. In making this ruling, the district court relied on United Services Auto. Ass'n v. State Farm Mut. Auto. Ins. Co., 784 S.W.2d 786, 787 (Ky.Ct.App.1990), which stated that there is no real distinction between added benefits and basic benefits "in so far as a right of reimbursement is concerned." Having concluded that Westfield could not recover basic benefits, the district court used United Services to conclude that Westfield could not recover added benefits. The district court explained that "Kentucky courts make no obvious distinction between BRB [basic benefits] and ARB [added benefits]." Op. at 7.
 
 
 24
 We disagree with the holding of the district court. First, as already discussed, Westfield can recover its payments of basic benefits. Second, United Services does not support Crete's position. The court in United Services analyzed the right of recovery for basic benefits under section 304-39.070(3), and noted that there was no similar right of recovery for added benefits. The court then permitted the recovery of the added benefits, concluding that an added benefits insurer should have the same right of recovery as a basic benefits insurer. Id. In the present case, Westfield is asserting its subrogation rights under section 304-39.140(2), which was not asserted by the parties in United Services nor examined by that court. Section 304-39.140(2) specifically provides an insurer of added benefits with a right of subrogation. In fact, the Reparations Act provides a broader right of subrogation for added benefits than for basic benefits because an added benefits insurer can recover "against any responsible third party." Id.
 
 
 25
 As already discussed, Crete's argument that section 304.39-060(2)(a) abolished Mrs. Morris' tort claims lacks merit because that section does not abolish tort liability based on death. In addition, the Kentucky Court of Appeals held that even if a tort claim is abolished by section 304.39-060(2)(a) for basic benefits, the tort claim is not abolished for added benefits. Ammons v. Winklepleck, 570 S.W.2d 287, 288 (Ky.Ct.App.1978).
 
 
 26
 Westfield can recover its added benefits payments from Crete's excess insurance through the subrogation rights provided in section 304-39.140(2). Neither the holding in United Services nor section 304.39-060(2)(a) bars Westfield's recovery of its added benefits.
 
 B. Double Recovery
 
 27
 After Mrs. Morris settled her claim against Crete, Westfield sought to recover from Mrs. Morris its benefits payments to her. Westfield argued that Mrs. Morris sued Crete over the same funeral expenses and lost wages that Westfield had paid her as benefits. Therefore, she received a double recovery when she settled her claim against Crete. The district court denied Westfield's motion to assert a claim against Mrs. Morris as moot because the court had already dismissed Westfield's claim against Crete.
 
 
 28
 Mrs. Morris is not entitled to a double recovery. Shelter Mut. Ins. Co. v. McCarthy, 896 S.W.2d 17 (Ky.Ct.App.1995). In this case, the district court did not consider whether Mrs. Morris received a double recovery. Therefore, we remand this issue to the district court for consideration.
 
 III
 
 29
 For the foregoing reasons, we REVERSE the district court's grant of summary judgment. We also REVERSE the district court's denial of Westfield's motion to assert a claim against Mrs. Morris and REMAND for consideration of this claim.